**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARK DePASQUALE, | ) |
| | ) 2:19-cv-01240-RJC |
| Plaintiff, | ) |
| | ) Judge Robert J. Colville |
| vs. | ) |
| | ) |
| PROGRESSIVE SPECIALTY INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**OPINION**

Robert J. Colville, United States District Judge

  Before the Court is the Motion for Summary Judgment (ECF No. 21) filed by Defendant Progressive Specialty Insurance Company ("Progressive"). Plaintiff Mark DePasquale ("DePasquale") filed a Response (ECF No. 23) and a Brief in Opposition (ECF No. 24) to Progressive's Motion on March 19, 2020. Progressive filed a Reply (ECF No. 25) to DePasquale's Response on March 24, 2020, and DePasquale filed a Surreply (ECF No. 26) on March 27, 2020. After seeking and being granted leave of Court to file a Supplemental Reply Brief, *see* ECF Nos. 34-35, Progressive filed its Supplemental Reply Brief (ECF No. 36) in support of its Motion on June 11, 2020. DePasquale filed a Response (ECF No. 37) to Progressive's Supplemental Reply Brief on June 22, 2020. Progressive and DePasquale each filed an unsolicited brief (ECF Nos. 38 and 39) thereafter on June 23, 2020 and June 24, 2020 respectively. This matter has been fully briefed, and is ripe for disposition.

I.      **Procedural History and Factual Background**

DePasquale filed the operative Complaint (ECF No. 1)[1] in this matter in the Court of Common Pleas of Allegheny County on August 30, 2019. Notice of Removal ¶ 2, ECF No. 1. This action was removed to this Court from the Court of Common Pleas of Allegheny County on September 27, 2019. Notice of Removal, ECF No. 1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Progressive filed an Answer (ECF No. 3) to DePasquale's Complaint on October 4, 2019.

In his Complaint, DePasquale asserts one claim for breach of contract against Progressive. Unless otherwise noted, the following facts are not in dispute:

On September 24, 2012, DePasquale was involved in a motor vehicle accident and suffered injuries as a result. Compl. ¶¶ 4; 13, ECF No. 1; Answer ¶¶ 1; 7, ECF No. 3. The accident was caused by the negligence of the other driver involved in the accident, and that driver accepted fault for the accident. Compl. ¶¶ 11-12, ECF No. 1; Answer ¶ 1, ECF No. 3. At the time of the accident, DePasquale was insured by an insurance policy (the "Policy"), which included underinsured motorist ("UIM") coverage, sold by Progressive. Compl. ¶ 3, ECF No. 1; Answer ¶ 2, ECF No. 3. The Policy purports to provide non-stacked UIM coverage in the amount of $100,000 per person/$300,000 per accident for both a 2011 Volkswagen Jetta Sedan and a 2003 Ford Escort Coupe.[2] Mot. ¶ 2, ECF No. 21 (citing Policy)[3]; Resp. to Mot. ¶ 2, ECF No. 23.

At the time of the accident, DePasquale was operating a 1998 Chevrolet Silverado pickup truck. Mot. ¶ 10, ECF No. 21; Resp. to Mot. ¶ 10, ECF No. 23. Progressive did not insure this

---

[1] The Court notes that DePasquale's Complaint in Civil Action is attached as Exhibit A to Progressive's Notice of Removal, which is also located at ECF No. 1. For ease of reference, this Court shall cite to DePasquale's Complaint as "Compl., ECF No. 1" and the Notice of Removal as "Notice of Removal, ECF No. 1."
[2] The Court notes that DePasquale agrees that the language of the Policy provides for such non-stacked coverage, but denies that the coverage was, in fact, non-stacked. Resp. to Mot. ¶ 2, ECF No. 23.
[3] The Policy is attached as Exhibit A to Progressive's Motion for Summary Judgment (ECF No. 21). For ease of reference, this Court will cite to the Policy simply as "Policy."

pickup truck, as it was insured by Liberty Mutual Insurance. Mot. ¶¶ 6-7, ECF No. 21; Resp. to Mot. ¶¶ 6-7, ECF No. 23. At the time of the accident, DePasquale worked part-time at, and was a co-owner, equally with his two brothers, of, a family-owned business called DePasquale & Sons d/b/a Jon Caire Boundary Parking.[4] Mot. ¶¶ 8-9, ECF No. 21; Resp. to Mot. ¶¶ 8-9, ECF No. 23. DePasquale was using the pickup truck for business purposes at the time of the accident. Mot. ¶¶ 10-11, ECF No. 21; Resp. to Mot. ¶¶ 10-11, ECF No. 23. DePasquale testified that he "used" the 1998 Chevrolet Silverado pickup truck approximately four to five times per month, *see* Mot. ¶ 13, ECF No. 21 (citing December 17, 2019 DePasquale Dep. 69:8-11, ECF No. 21 Ex. C); Resp. to Mot. ¶ 13, ECF No. 23, and that he took the vehicle home approximately two to four times per month, *see* Mot. ¶ 13, ECF No. 21 (citing December 17, 2019 DePasquale Dep. 44:23-45:5, ECF No. 21 Ex. C); Resp. to Mot. ¶ 14, ECF No. 23. The Certificate of Title for the 1998 Chevrolet Silverado pickup truck lists the owner of the vehicle as "Mark J. DePasquale DBA DePasquale & Sons." Mot. Ex. E at 59, ECF No. 21. The insurance card attached to Progressive's Motion is for a 1998 Chevrolet pickup truck. Mot. Ex. E at 62, ECF No. 21. This insurance card lists the insurer of the pickup truck as Netherlands Insurance Company,[5] and further lists the insured as "DePasquale & Sons Inc. DBA Joncaire & Boundary." *Id*. Mark DePasquale is not listed on the attached insurance card, and the actual policy for the pickup truck is not attached to Progressive's Motion for Summary Judgment. *Id*.

DePasquale was covered by UIM coverage by DePasquale & Sons d/b/a Jon Caire Boundary Parking's insurance policy at the time of the accident at issue. Compl. ¶ 5, ECF. No. 1;

---

[4] DePasquale & Sons d/b/a Jon Caire Boundary Parking runs a parking lot on property owned by DePasquale & Sons d/b/a Jon Caire Boundary Parking. *See* December 17, 2019 DePasquale Dep. 17:6-18:2, ECF No. 21 Ex. C.

[5] The Court notes that the parties are in agreement that the Chevrolet pickup truck was insured by Liberty Mutual Insurance at the time of the accident at issue. Mot. ¶¶ 6-7, ECF No. 21; Resp. to Mot. ¶¶ 6-7, ECF No. 23. As such, for purposes of the present Motion, the Court will consider the attached insurance card as evidence that DePasquale's employer, DePasquale & Sons, Inc., maintained an insurance policy on the 1998 Chevrolet Silverado pickup truck that DePasquale was operating at the time of the accident.

Answer ¶ 1, ECF No. 3.  DePasquale and Sons, Inc. is an active Pennsylvania business corporation which was created on February 25, 2004.  Mot. Ex. E at 61, ECF No. 21.  DePasquale's brother, Carl DePasquale, is listed as president of DePasquale and Sons, Inc.  *Id*.  DePasquale alleges, and Progressive denies, that DePasquale has exhausted both the tortfeasor's insurance coverage and the "primary" UIM coverage available to DePasquale.[6]  Compl. ¶ 6, ECF. No. 1; Answer ¶ 3, ECF No. 3.  After purportedly exhausting the tortfeasor's coverage and the primary UIM coverage, DePasquale made a claim to Progressive for his own personal UIM coverage under the Policy.  *Id*.  Progressive investigated the claim, and made no offer as to the UIM coverage under the policy.  Compl. ¶ 7, ECF. No. 1; Answer ¶ 4, ECF No. 3.  Progressive denied DePasquale's insurance claim for UIM coverage by letter on January 12, 2017.  Mot. ¶ 19, ECF No. 21.  Progressive's denial letter states that there was no applicable UIM coverage under the policy for the accident at issue because Progressive had determined that DePasquale was "operating a non[-]owned vehicle not listed on [the Policy] that was available for his regular use and which he may have owned and insured under another carrier."  Mot. Ex. F, ECF No. 21.

DePasquale asserts that Progressive had no legal basis to deny his claim for UIM coverage under the Policy.  Compl. ¶ 19, ECF No. 1.  DePasquale seeks payment under the Policy's UIM coverage for the injuries and damages he sustained as a result of the accident, less the coverage that DePasquale has already received from other policies.  Compl. ¶ 21, ECF No. 1.  Progressive asserts that it has not breached the Policy, and denies that it owes DePasquale compensation under the terms of the Policy's UIM coverage.  Answer ¶ 8, ECF No. 3.  Specifically, in its Affirmative Defenses, Progressive asserts that DePasquale, in applying for the Policy, elected to waive the

---

[6] The "primary" UIM coverage is seemingly a reference to the UIM coverage provided by the Liberty Mutual Insurance policy that had been obtained by DePasquale's employer for the 1998 Chevrolet Silverado pickup truck.  *See* Mot. ¶ 18, ECF No. 21; Resp. to Mot. ¶ 18, ECF No. 23.

4

stacking of UIM coverage, and that DePasquale, in securing the Policy, further elected the limited tort option barring him from making a claim for pain and suffering unless an exception under Section 1705 of the Motor Vehicle Financial Responsibility Law applies. Answer ¶ 17, ECF No. 3. Progressive further asserts that the Policy explicitly provides that uninsured/underinsured coverage does not apply to bodily injuries sustained by any person while that person was using or operating "a motor vehicle that is owned by or available for the regular use of [DePasquale] or a relative[,]" unless that vehicle is insured under the Policy. *Id.* at ¶ 18, ECF No. 3 (quoting Policy at 13).

Progressive asserts that it is entitled to summary judgment on three bases: (1) the Policy excludes UIM coverage because DePasquale owned the 1998 Chevrolet Silverado pickup truck he was driving at the time of the accident, and the pickup truck was not insured under the Policy; (2) the Policy excludes UIM coverage because DePasquale regularly used the pickup truck he was driving at the time of the accident, and the pickup truck was not insured under the Policy; and (3) the Supreme Court of Pennsylvania's decision in *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131 (Pa. 2019) does not apply in the present action. Mot. ¶¶ 23-25, ECF No. 21. In opposition, DePasquale argues that: (1) DePasquale & Sons d/b/a Jon Caire Boundary Parking, and not DePasquale, owned the pickup truck at the time of the accident; (2) the evidence before the Court is not sufficient to support a determination that the pickup truck was available for DePasquale's regular use; and (3) the Pennsylvania Supreme Court's holding in *Gallagher* is applicable to the facts presented in the present matter. Resp. to Mot. ¶¶ 23-25, ECF No. 23.

## II.   Legal Standard

Summary judgment may be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P.

56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–19 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998).

The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248.

### III. Discussion

#### A. "Household Exclusion" and "Regular Use Exclusion"

The Policy provides that UIM coverage does not apply to bodily injuries sustained by any person while that person was using or operating "a motor vehicle that is owned by or available for the regular use of you or a relative[,]" unless that vehicle is insured under the Policy. Policy at 13. The Policy's household exclusion precludes UIM coverage for injuries sustained by any person while that person is operating a motor vehicle not insured under the Policy that is owned by

DePasquale or a resident relative. The Policy's regular use exclusion precludes UIM coverage under the Policy for injuries sustained by any person while that person is operating a vehicle that is available for DePasquale's regular use and not insured under the Policy.

### 1. Household Exclusion

With respect to the household exclusion, there is a genuine issue of material fact as to whether DePasquale owned the 1998 Chevrolet Silverado pickup truck he was driving at the time of the accident. In asserting that DePasquale owned the truck at issue at the time of the accident, Progressive relies primarily on the fact that DePasquale's name is listed, along with the name of his employer, on the Certificate of Title for the truck. Br. in Supp. 5, ECF No. 22. The Certificate of Title for the 1998 Chevrolet Silverado pickup truck lists the owner of the vehicle as "Mark J. DePasquale DBA DePasquale & Sons." Mot. Ex. E at 59, ECF No. 21. With respect to this argument, the Court notes that the United States Court of Appeals for the Third Circuit has explained that "it is clear that under the Pennsylvania scheme, a state-issued 'certificate of title is in no way controlling on the question of ownership, and is merely some evidence of it.'" *Aetna Cas. & Sur. Co. v. Duncan*, 972 F.2d 523, 526 (3d Cir. 1992) (quoting *Federal Kemper Ins. Co. v. Ward*, 679 F.Supp. 489, 492 (E.D. Pa. 1988)); *see also ITOCHU Int'l Inc. v. Devon Robotics, LLC*, No. 2:09-CV-4123, 2014 WL 12613397, at *1 n.1 (E.D. Pa. Aug. 11, 2014) ("State-issued title to a motor vehicle is indicative, though not determinative, of ownership; ownership is determined based on the following attributes: 'use, benefit, possession, control, responsibility for, and disposition of the automobile.'" (quoting *Aetna*, 972 F.2d at 526)); *Office of Constable v. Dep't of Transp.*, 112 A.3d 678, 683 (Pa. Commw. Ct. 2015) ("Title ownership, as well as actual possession, is only one element of ownership." (citing *Commonwealth v. One 1988 Suzuki Samurai*, 139 Pa. Cmwlth. 68, 589 A.2d 770 (1991))).

Further, Progressive itself has submitted evidence which tends to cast doubt on DePasquale's ownership of the vehicle.  As stated above, Progressive's letter denying DePasquale's UIM coverage claim states that there was no applicable UIM coverage under the policy for the accident at issue because Progressive's investigation had determined that DePasquale was "*operating a non[-]owned vehicle* not listed on [the Policy] that was available for his regular use and which he may have owned and insured under another carrier." Mot. Ex. F, ECF No. 21 (emphasis added).  The Court notes that this letter is somewhat ambiguous in that it states that Progressive had determined that DePasquale was operating a non-owned vehicle, but also states that DePasquale may have owned the vehicle.  In evaluating the evidence before it, this Court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor.  *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).  That Progressive stated that its own investigation had determined that DePasquale was driving a non-owed vehicle is a fact that weighs against the entry of summary judgment at this time.  Moreover, DePasquale testified that he had no involvement in the acquisition of insurance for the 1998 Chevrolet Silverado pickup truck, *see* DePasquale Dep. 66:23-68:15, ECF No. 21 Ex. C, and also seemingly did not have substantial possession of or control over the vehicle, *see* DePasquale Dep. 44:7-13; 45:15-46:3; 46:8-17; 54:24-55:20, ECF No. 21 Ex. C; *see also* Mario DePasquale Aff. ¶¶ 2-5, ECF No. 23, Ex. 1.

In light of all of the above, Progressive has not, at this time, sufficiently established that DePasquale was the owner of the 1998 Chevrolet Silverado pickup truck at the time of the accident at issue in this matter.  Accordingly, the Court cannot conclude that Progressive has established that judgment as a matter of law is warranted with respect to the issue of the applicability of the household exclusion in this matter.  In an abundance of caution, the Court will deny Progressive's

Motion for Summary Judgment without prejudice as to this issue, as discovery is not yet complete in this matter.[7]

### 2. Regular Use Exclusion

With respect to the regular use exclusion, the Court initially notes that "[c]ourts have generally found the term 'regular use' unambiguous. Indeed, it appears that every Pennsylvania state court to have considered the question has come to that conclusion." *Auto. Ins. Co. of Hartford, Conn. v. Curran*, 994 F. Supp. 324, 329 (E.D. Pa. 1998) (quoting *Nationwide Mutual Insurance Co. v. Shoemaker*, 965 F. Supp. 700, 703 (E.D. Pa. 1997)). "In Pennsylvania, the test for 'regular use' is whether the use is 'regular' or 'habitual.'" *Brink v. Erie Ins. Grp.*, 940 A.2d 528, 535 (Pa. Super. 2008) (citing *Crum & Forster Pers. Ins. Co. v. Travelers Corp.*, 631 A.2d 671, 673 (Pa. Super. 1993)). "Additionally, the test for regular use does not consider how often a vehicle, or fleet of vehicles, was actually used, but rather considers whether this vehicle or group of vehicles was regularly *available* for use." *Prudential Prop. & Cas. Ins. Co. v. Jeffrey D. Armstrong*, No. CIV.A.03-4575, 2004 WL 603416, at *2 (E.D. Pa. Mar. 24, 2004) (citing *Auto. Ins. Co. of Hartford, Conn. v. Curran*, 994 F. Supp. 324, 330 (E.D. Pa. 1998)). The Superior Court of Pennsylvania has explained:

> "Whether a vehicle is covered, or whether it is excluded under a provision denying coverage where such vehicle is furnished for the insured's (or family member's) regular use, normally becomes a jury question." 6C Appleman, Insurance Law and Practice, § 4455, p. 565. Where the facts are not in dispute, however, and reasonable minds cannot differ regarding the result, the issue of coverage can be decided as a matter of law by the court.

---

[7] As discussed in further detail below, the Court further notes that there is a pending appeal in the case of *Donovan v. State Farm Mut. Auto. Ins. Co.*, 392 F. Supp. 3d 545 (E.D. Pa. 2019) presently pending before the United States Court of Appeals for the Third Circuit at Docket No. 19-2733. The *Donovan* appeal involves issues respecting the applicability of the household exclusion similar to those presented in this case. The Court notes that, even if this Court had found that Progressive had established DePasquale's ownership of the pickup truck in question, this Court would be inclined to stay a decision on the issue of the applicability of the household exclusion in this matter pending the Third Circuit's decision in *Donovan*.

*Crum & Forster Pers. Ins. Co. v. Travelers Corp.*, 631 A.2d 671, 673 (Pa. Super. 1993).

The Court finds that there remains a genuine dispute of material fact as to whether the 1998 Chevrolet Silverado pickup truck was *available* for DePasquale's regular use at the time of the accident at issue. In arguing that DePasquale regularly used the pickup truck at issue, Progressive relies primarily on DePasquale's testimony in response to defense counsel's questions regarding whether DePasquale "typically" used the truck in a certain way, and whether DePasquale would step in on a "regular basis" when other family members were unable to perform certain tasks. Br. in Supp. 6, ECF No. 22 (citing December 30, 2019 DePasquale Dep. 104:1-13; 104:14-24, ECF No. 21 Ex. D). The Court affords this testimony little weight, as these questions attempt to elicit a legal interpretation from DePasquale with respect to whether his use of the truck would qualify as "regular use" under the Policy. *See 401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 879 A.2d 166, 170 (Pa. 2005) (explaining that, under Pennsylvania law, "the interpretation of an insurance contract is a question of law."). The frequency of DePasquale's use of the pickup truck, the amount of time he spent operating the truck, and, most importantly, how readily available the truck was for his use are more relevant to his regular use than the statements on which Progressive primarily relies.

Further, while DePasquale testified that he "used" the 1998 Chevrolet Silverado pickup truck approximately four to five times per month, *see* December 17, 2019 DePasquale Dep. 69:8-11, ECF No. 21 Ex. C, and that he took the vehicle home approximately two to four times per month, *see* December 17, 2019 DePasquale Dep. 44:23-45:5, ECF No. 21 Ex. C), DePasquale also testified that: (1) he only worked at the DePasquale & Sons d/b/a Jon Caire Boundary Parking lot for five to ten hours per week, *see id.* at 26:12-18; (2) the truck was regularly kept in the DePasquale & Sons parking lot when not in use, *see id.* at 44:7-13; (3) he did not possess a set of keys for the truck, *see id.* at 45:15-46:3; (4) he needed permission to use the truck and other family

members were not required to seek permission to use the truck, *see id.* at 46:8-17; and (5) the truck was also used by other members of the family in running the parking lot, and DePasquale had to make special arrangements to use the truck, *see id.* at 54:24-55:20.  Further, Mario DePasquale, DePasquale's brother and a co-owner of  DePasquale & Sons d/b/a Jon Caire Boundary Parking, has submitted an Affidavit stating that the 1998 Chevrolet Silverado pickup truck was dedicated to and regularly used by DePasquale & Sons d/b/a Jon Caire Boundary Parking, that the truck would not be available for (Mark) DePasquale's regular or casual use, and that (Mark) DePasquale was required to make special arrangements to use the truck.  Mario DePasquale Aff. ¶¶ 2-5, ECF No. 23, Ex. 1.

At this juncture, Progressive fails to set forth evidence sufficient to establish that the 1998 Chevrolet Silverado pickup truck was regularly available for DePasquale's use at the time of the accident at issue in this matter.[8]  Viewing the evidence in a light most favorable to DePasquale, there remain genuine issues of fact regarding: (1) how often other members of the family and/or DePasquale & Sons d/b/a Jon Caire Boundary Parking employees utilized the truck in question, such that it would not be available for DePasquale's use; (2) whether DePasquale was ever denied permission to use the truck, and, if so, how often; and (3) the actual amount of time DePasquale spent operating the vehicle in question in the relevant timeframe leading up to the 2012 accident.  Each of these issues standing alone would likely be sufficient to warrant the denial of Progressive's Motion.  Taken together, these issues certainly support a finding that Progressive has not, at this juncture, met its burden of establishing that there is no genuine dispute about any material fact,

---

[8] The Court also notes that Progressive's citation to *Burstein v. Prudential Prop. & Cas. Ins. Co.*, 809 A.2d 204 (Pa. 2002) is unavailing.  The regular use exclusion in *Burstein* provided that the insurer would "not pay for bodily injury to you or a household resident using a non-owned car not insured under this part, regularly used by you or a household resident." *Burstein*, 809 A.2d at 207.  In *Burstein*, the parties agreed that this exclusion, if applied, would bar the plaintiffs' ability to recover UIM benefits. *Id.* at 207.  The Pennsylvania Supreme Court did not affirmatively hold, however, that driving a vehicle two times in the past is sufficient in all instances to establish regular use.

and that judgment as a matter of law is warranted, with respect to the issue of the applicability of the Policy's regular use exclusion. Again, given that discovery is not complete in this matter, this Court will deny Progressive's Motion for Summary Judgment without prejudice as to this issue.

### B. Stacking Waiver

In arguing that DePasquale is not entitled to UIM coverage under the Policy for the accident at issue, Progressive also relies on a waiver of stacking of underinsured motorist coverage (the "UIM Stacking Waiver") signed by DePasquale. Br. in Supp. 7, ECF No. 22. Stacked coverage is provided for by Section 1738 of the Motor Vehicle Financial Responsibility Law ("MVFRL"), which provides that "[w]hen more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage," the limits of coverage for each insured vehicle owned by the insured "shall be the sum of the limits for each motor vehicle as to which the injured person is an insured." 75 Pa.C.S.A. § 1738(a). "[S]tacked UM/UIM coverage is the default coverage available to every insured and provides stacked coverage on all vehicles and all policies." *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131, 137 (Pa. 2019). In *Gallagher*, the Supreme Court of Pennsylvania explained:

> Under the MVFRL, insureds can choose to waive stacked coverage. [75 Pa.C.S.A.] § 1738(b). If an insured decides to waive stacked coverage, then the insured's premiums must be reduced to reflect the different cost of coverage. *Id.* at § 1738(c). Importantly, the MVFRL makes clear that to effectuate a waiver of UM/UIM coverage, an insurer must provide the insured with a statutorily-prescribed waiver form, which the named insured must sign if he wishes to reject the default provision of stacked coverage. *Id.* at § 1738(d). This waiver provision has the salutary effect of providing insureds with detailed notice and knowledge of their rights to UM/UIM coverage absent such formal waiver.

*Gallagher*, 201 A.3d at 137. The UIM Stacking Waiver in the present case conforms with 75 Pa.C.S.A. § 1738(d), and provides:

> By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which

> the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

Mot. Ex. B, ECF No. 21.

In *Gallagher*, an insurer denied stacked UIM coverage despite the fact that the insured had paid for stacking on both of his insurance policies and had not signed a waiver of stacking for either policy. *Gallagher*, 201 A.3d at 137. The Supreme Court of Pennsylvania held in *Gallagher* that "the household vehicle exclusion violates the MVFRL." *Id.* at 132. The Pennsylvania Supreme Court further explained that the household vehicle exclusion was invalid and unenforceable in *Gallagher* because it acted as a de facto waiver of stacked UIM coverage despite the MVFRL's requirement that stacked UIM coverage be provided unless it is properly waived. *Id.* at 138.

The issue presented by Progressive's reliance on the UIM Stacking Waiver in the present case is whether the UIM Stacking Waiver constitutes a valid and/or enforceable waiver of "inter-policy stacking," as opposed to "intra-policy stacking," on DePasquale's part. Inter-policy stacking refers to "the stacking of limits available on two or more separate policies." *Craley v. State Farm Fire & Cas. Co.*, 895 A.2d 530, 533 (Pa. 2006). Intra-policy stacking entails "the stacking of limits applicable to more than one vehicle insured under a single policy." *Craley*, 895 A.2d at 533. As the pickup truck was not insured under the Policy, stacking between two separate policies, i.e. the Policy and DePasquale's employer's insurance policy, is at issue in this case.

Under 75 Pa.C.S.A. § 1738, an insured may waive both intra-policy and inter-policy coverage, so long as the waiver is knowing. *See Craley*, 895 A.2d at 541 ("[I]t is readily apparent

13

that some form of knowing waiver must occur before we allow enforcement of an inter-policy stacking waiver."). In *Craley*, the Pennsylvania Supreme Court explained:

> While the language of [75 Pa.C.S.A. § 1738(d)] is unambiguous in regard to the sufficiency of waiver of intra-policy stacking as it speaks to stacking as "the sum of the limits for each motor vehicle insured under *the policy*," the language does not clearly address an inter-policy stacking waiver, which would involve the limits for each motor vehicle insured under the *policies*.

*Id.* (quoting 75 Pa.C.S. § 1738(d)). The *Craley* court was thus left to determine, under the specific facts presented in that case, whether the stacking waiver form at issue put the insured on clear notice that he was waiving inter-policy stacking. *Id.* The Supreme Court of Pennsylvania ultimately held:

> Randall[9] could not have thought he was receiving a reduced premium for waiving intra-policy stacking because there could be no intra-policy stacking with only one vehicle on "the policy." Absent the applicability of intra-policy waiver, the only interpretation fairly available to Randall was that his premium-reducing waiver applied to inter-policy stacking. Therefore, we conclude that the waiver is valid and enforceable under the facts of this case.

*Id.* at 542. In a footnote, the Pennsylvania Supreme Court stated:

> Although we conclude that the waiver in this case was knowing, our consideration nonetheless raises questions as to whether the waiver would be knowing if Randall's policy had covered more than one vehicle. If a named insured insures some cars under one policy ("the policy") and others under a separate policy ("the second policy") and signs the form provided in subsection (d) which refers to the waiver of stacking "for each motor vehicle insured under the policy," that named insured reasonably could assume that he received a reduced premium for waiver of the stacking of the limits regarding the vehicles insured by "the policy" with no knowledge that he was waiving stacking of the applicable limits of "the policy" to "the second policy," despite paying premiums on both policies. We urge the legislature or the Commissioner to clarify whether and how insurers may secure a valid waiver in such a case.

*Id.* at 542 n.18; *see also Donovan v. State Farm Mut. Auto. Ins. Co.*, 392 F. Supp. 3d 545, 551 (E.D. Pa. 2019) (holding that an insurer could not rely on an insured's "waiver of intra-policy

---

[9] "Randall" refers to the named insured in *Craley* under whose insurance policy the *Craley* plaintiffs sought inter-policy stacking of uninsured motorist benefits. *Craley*, 895 A.2d at 533.

14

stacking because [the insured's] policy covered multiple vehicles. *Craley* instructs that in such cases a waiver that refers only to the 'policy' cannot be assumed to waive inter-policy stacking.").

The facts of this case align very closely with the potential scenario discussed by the Supreme Court of Pennsylvania in the above-quoted footnote, as well as the factual scenario presented in *Donovan*. In *Donovan*, the United States District Court for the Eastern District of Pennsylvania found that an insured who had obtained a policy that covered multiple vehicles and who had signed a stacking waiver which mirrored the language provided by 75 Pa.C.S.A. § 1738(d) "did not knowingly waive inter-policy stacking[,]" and further held that "*Gallagher* controls this case, and therefore [the insurer] cannot rely upon the household exclusion to deny underinsured coverage." *Donovan*, 392 F. Supp. 3d at 552. In the present case, the Policy covers two vehicles, neither of which was involved in the accident in this matter. Mot. ¶ 2, ECF No. 21; Resp. to Mot. ¶ 2, ECF No. 23. DePasquale, like the insured in *Donovan*, also signed a waiver of stacking form that mirrors the language of 75 Pa.C.S.A. § 1738(d). *See* Mot. Ex. B, ECF No. 21.

The Court notes that there is an appeal in *Donovan* currently pending before the United States Court of Appeals for the Third Circuit at Docket No. 19-2733. Given the fact that the appeal in *Donovan* will involve issues materially similar to those discussed herein respecting the manner in which an insured may waive inter-policy stacking and the applicability of the household exclusion where an insured has not waived inter-policy stacking, this Court, had it not found that Progressive's Motion should be denied on independent bases, would have been inclined to stay a decision regarding the issue of the household exclusion's enforceability pending the Third Circuit's decision in *Donovan*.

The Court further notes that several issues of fact remain with respect to the issue of the applicability of the UIM Stacking Waiver relied upon by Progressive in this action. First, the

Liberty Mutual Insurance policy for the 1998 Chevrolet Silverado pickup truck is not a part of the record presently before the Court. Rather, Progressive has attached an insurance card which lists "DePasquale & Sons Inc. DBA Joncaire & Boundary," and not DePasquale, as the insured. Mot. Ex. E at 62, ECF No. 21. As such, the Court cannot determine whether DePasquale was a named insured under that policy. *See Generette v. Donegal Mut. Ins. Co.*, 957 A.2d 1180, 1190 (Pa. 2008) (holding that stacking waivers provided for by Section 1738 apply only to "insureds" as defined by Section 1702). Section 1702 defines "insured" as any of the following:

> (1) An individual identified by name as an insured in a policy of motor vehicle liability insurance.
>
> (2) If residing in the household of the named insured:
>
> > (i) a spouse or other relative of the named insured; or
> >
> > (ii) a minor in the custody of either the named insured or relative of the named insured.

75 Pa.C.S.A. § 1702. If DePasquale is not an "insured" as defined by Section 1702, stacking is not at issue in this action.

Further, the evidentiary record and briefing before the Court are simply underdeveloped with respect to the issue of DePasquale's knowledge respecting what coverage he had waived. These issues can be more effectively addressed following the completion of full discovery in this matter, and with the benefit of a fully developed record.[10] *See LM Gen. Ins. Co. v. LeBrun*, No. CV 19-2144-KSM, 2020 WL 3574514, at *8 (E.D. Pa. July 1, 2020) ("In *Craley*, which has not been overruled, the Pennsylvania Supreme Court has made clear that waiver of inter-policy stacking must be 'knowing,' and conducted a fact-specific inquiry as to whether Mr. Craley's waiver was knowing in that case. Given that *Craley* and *Donovan* were decided on summary

---

[10] Defendant's Motion was filed in February, and the parties have, to date, not completed fact discovery in this matter. *See* ECF No. 29; ECF No. 30.

judgment, *after full discovery*, we decline to decide the issue on a motion to dismiss. The parties may brief the issue again at summary judgment, with the benefit of discovery." (emphasis added)). Accordingly, the Court will also dismiss Progressive's Motion for Summary Judgment to the extent that it relies on the UIM Stacking Waiver without prejudice to be raised following the completion of discovery in this matter.

### IV.     Conclusion

Accordingly, for the reasons discussed above, this Court will deny Progressive's Motion for Summary Judgment without prejudice. The Court also notes that Progressive, in filing the present Motion for Summary Judgment, failed to comply with Local Rule 56(B)(1), which requires the separate filing of a concise statement of material facts. To the extent that any party elects to file a subsequent motion for summary judgment in this matter, the parties are directed to consult LCvR 56 for the requirements of a motion for summary judgment, as well as responses and replies thereto, filed in this District. An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: August 27, 2020

cc/ecf: All counsel of record